## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

**SARAH BAXTER HILL,**                         **CASE NO. 14-06783-5-SWH**
                                              **CHAPTER 13**

    **DEBTOR**

## OBJECTION TO CLAIM

Now comes the debtor, by and through undersigned counsel, and objects to Court Claim #7 of Residential Mortgage Loan Trust 2013-TT2, by U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee, serviced by Seneca Mortgage Servicing, LLC ("creditor"), filed in the total amount of $190,562.89 and shows the Court as follows:

    1.    The debtor filed this Chapter 13 case on November 21, 2014.

    2.    Filed on April 6, 2015, Court Claim #7 alleges a pre-petition arrears amount of $129,056.75. A copy of the claim is attached as Exhibit A.

    3.    The debtor objects to the claim on several grounds:

        a.    First, the pre-petition arrearage is incorrect. As recently as February 2015, the debtor received a mortgage statement indicating the amount necessary to bring the loan current was $21,362.74. Even with the -$47,154.75 escrow balance, the mortgage statement proof of claim are inconsistent. A copy of the mortgage statement is attached as Exhibit B. The debtor filed several cases in the Middle District of NC before this one (Nos. 07-80509, 08-80748, and 12-80406). The debtor believes the conduit payments from those cases may not be properly reflected in the present proof of claim, and she requests a full payment history and account transaction of the loan to review.

        b.    Second, the debtor objects to the prepetition fees, expenses, and charges itemized in Part 2 of Form B 10A. The debtor does not recall receiving proper notice of these fees. She contends that the creditor did not comply with the provisions of N.C. Gen. Stat. § 45-91 regarding the assessment of the fees, expenses, and charges itemized in its claim assessed between the effective date of the statute and the petition date. It is undisputed that the creditor is a "servicer" of a "home loan" for the purposes of N.C. Gen. Stat. § 45–90(1), and is therefore subject to the notice requirements of N.C. Gen. Stat. § 45–90. The creditor provides no evidence that proper notice documentation was provided to the debtor regarding the fees claimed. Thus, pursuant to N.C. Gen. Stat. § 45–90(1), and *In re Smith*, No. 08-07636-8-JRL, 2012 WL 5462850 (Bankr. E.D.N.C. Nov. 8,

2012), the creditor is deemed to have waived the prepetition mortgage fees, expenses, and charges. To the extent the creditor produces evidence that proper notice was provided, then the debtor will withdraw this portion of the objection. Excepted from this objection is the $350 POC Fee at subparagraph 9 of Part 2 of Form B 10A.

4.     As such, the debtor requests that the said claim be disallowed as filed without prejudice to the creditor filing a corrected POC removing the waived fees and showing proper accounting and application of payments.

WHEREFORE, debtor prays that the said claim be disallowed as filed without prejudice to the creditor filing a corrected proof of claim as further described herein, and that she have such other and further relief as is just and proper.

Dated: May 22, 2015.

SASSER LAW FIRM

By: s/ Travis Sasser
Travis Sasser, State Bar No. 26707
2000 Regency Parkway, Suite 230
Cary, N.C. 27518
Tel: 919.319.7400
Fax: 919.657.7400

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | FOR THE EASTERN DISTRICT OF NORTH CAROLINA, RALEIGH DIVISION | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor(s):**
Sarah Baxter Hill

**Case Number:** 14-06783-5-SWH

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or entity to whom the debtor owes money or property):
Residential Mortgage Loan Trust 2013-TT2, by U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee

**COURT USE ONLY**

**Name and address where notices should be sent:**
Seneca Mortgage Servicing, LLC
611 Jamison Road
Elma, NY 14059
Telephone Number:                    Email:

☐ Check this box to if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent (if different from above)**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. **Amount of Claim as of Date Case Filed:** **$190,562.89**

   If all or part of the claim is secured, complete item 4.
   If all or part of the claim is entitled to priority, complete item 5.
   ☒ Check this box if the claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** Money Loaned
   (See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** 2656

   **3a.** Debtor may have scheduled account as: _____ (See instruction #3a)

   **3b.** Uniform Claim Identifier (optional): _____ (See instruction #3b)

4. **Secured Claim (See instruction #4)**
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

   **Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other: _____
   **Describe:** 2609 & 2611 South Alston Avenue, Durham, NC 27713

   **Value of Property:** $ _____
   **Annual Interest Rate:** 10.8200%  ☐ Fixed  ☒ Variable
   (when case was filed)

   **Amount of arrearage and other charges, as of the time case filed, included in secured claim, if any:** $129,056.75

   **Basis for perfection:** Mortgage

   **Amount of Secured Claim:** $190,562.89

   **Amount Unsecured:** _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $12,476*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

   ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

   ☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (__).

   **Amount entitled to priority:** $ _____

   *Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See Instruction #7, and the definition of "redacted".*)

   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

   If the documents are not available, please explain:

8. **Signature: (See instruction #8)**

   Check the appropriate box:
   ☐ I am the creditor.  ☒ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

   I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

   **Print Name:** S. Troy Staley
   **Title:** Attorney at Law
   **Company:** Hutchens Law Firm
   **Address and telephone number (if different from notice address above):**
   Post Office Box 2505, 4317 Ramsey Street, Fayetteville, NC 28302
   **Telephone:** (910) 864-2668    **Email:** bkymail@hskplaw.com

   *Signature:* S. Troy Staley

   **Date:** April 6, 2015

   *Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§

**EXHIBIT A**

B10 (Official Form 10) (04/13)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of this notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the good or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods and services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided in true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

---

| DEFINITIONS | | INFORMATION |
|---|---|---|

**DEFINITIONS**

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. § 101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosures of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**INFORMATION**

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

B 10A (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.
See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor(s): | Sarah Baxter Hill | Case number: | 14-06783-5-SWH |
| Name of creditor: | Residential Mortgage Loan Trust 2013-TT2, by U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee | Last four digits of any number you use to identify the debtor's account: | 2656 |

Uniform Claim Identifier: _____

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due** (1) $69,555.74

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 11.1250% | 04/20/07 | 01/19/08 | $5,803.56 |
| 10.8200% | 01/20/08 | 11/21/14 | $51,485.55 |
| Total interest due as of the petition date | | | $57,289.11 |

Copy total here ▶ (2) + $57,289.11

3. **Total principal and interest due** (3) $126,844.85

## Part 2: Itemize Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1.  Late Charges | **Total:** | **$2,319.70** |
| | 09/27/05 | $28.38 |
| | 01/06/05 | $28.40 |
| | 11/07/05 | $28.40 |
| | 12/06/05 | $28.40 |
| | 01/05/06 | $28.40 |
| | 02/07/06 | $28.40 |
| | 03/08/06 | $28.51 |
| | 04/05/06 | $28.51 |
| | 05/08/06 | $28.51 |
| | 06/06/06 | $28.51 |
| | 07/06/06 | $28.51 |
| | 08/07/06 | $28.51 |
| | 09/05/06 | $29.09 |
| | 10/06/06 | $29.09 |
| | 11/07/06 | $29.09 |
| | 12/06/06 | $29.09 |
| | 01/05/07 | $29.09 |
| | 02/07/07 | $29.09 |
| | 03/08/07 | $29.09 |
| | 04/05/07 | $29.09 |
| | 05/08/07 | $29.09 |
| | 06/05/07 | $29.09 |
| | 07/06/07 | $29.09 |
| | 08/07/07 | $29.09 |
| | 09/05/07 | $29.09 |
| | 10/08/07 | $29.09 |
| | 11/06/07 | $29.09 |
| | 12/06/07 | $29.09 |
| | 01/07/08 | $29.09 |
| | 02/05/08 | $29.09 |
| | 03/07/08 | $28.53 |
| | 04/07/08 | $28.53 |
| | 05/08/08 | $28.53 |
| | 06/05/08 | $28.53 |
| | 07/08/08 | $28.53 |

B 10A (Attachment A) (12/11)

| Date | Amount |
|---|---|
| 08/05/08 | $28.53 |
| 09/05/08 | $28.53 |
| 10/07/08 | $28.53 |
| 11/05/08 | $28.53 |
| 12/08/08 | $28.53 |
| 01/06/09 | $28.53 |
| 02/05/09 | $28.53 |
| 03/10/09 | $28.52 |
| 04/07/09 | $28.52 |
| 05/06/09 | $28.52 |
| 06/05/09 | $28.52 |
| 07/07/09 | $28.52 |
| 08/05/09 | $28.52 |
| 09/07/09 | $28.52 |
| 10/06/09 | $28.52 |
| 11/05/09 | $28.52 |
| 12/08/09 | $28.52 |
| 01/05/10 | $28.52 |
| 02/05/10 | $28.52 |
| 03/09/10 | $28.52 |
| 04/08/10 | $28.52 |
| 05/06/10 | $28.52 |
| 06/07/10 | $28.52 |
| 07/06/10 | $28.52 |
| 08/05/10 | $28.52 |
| 09/07/10 | $28.52 |
| 10/06/10 | $28.52 |
| 11/05/10 | $28.52 |
| 12/07/10 | $28.52 |
| 01/05/11 | $28.52 |
| 02/07/11 | $28.52 |
| 03/08/11 | $28.52 |
| 04/05/11 | $28.52 |
| 05/06/11 | $28.52 |
| 06/07/11 | $28.52 |
| 07/06/11 | $28.52 |
| 08/05/11 | $28.52 |
| 09/06/11 | $28.52 |
| 10/06/11 | $28.52 |
| 11/07/11 | $28.52 |
| 12/06/11 | $28.52 |
| 01/05/12 | $28.52 |
| 02/07/12 | $28.52 |
| 03/07/12 | $28.52 |
| 04/05/12 | $28.52 |
| 05/08/12 | $28.52 |

| 2. | Attorney Fees and Costs | Total: | $5,772.18 |
|---|---|---|---|
| | 03/01/07 | | $142.18 |
| | 03/13/07 | | $35.00 |
| | 11/27/07 | | $195.00 |
| | 03/16/09 | | $80.00 |
| | 04/22/10 | | $35.00 |
| | 11/26/13 | | $575.00 |
| | 03/03/14 | | $140.00 |
| | 04/16/14 | | $100.00 |
| | 06/11/14 | | $100.00 |
| | 06/12/14 | | $80.00 |
| | 06/16/14 | | $80.00 |
| | 07/07/14 | | $40.00 |
| | 07/14/14 | | $200.00 |
| | 07/14/14 | | $750.00 |
| | 07/14/14 | | $60.00 |
| | 08/03/14 | | $200.00 |
| | 08/04/14 | | $1,120.00 |
| | 08/12/14 | | $40.00 |
| | 08/18/14 | | $80.00 |
| | 08/18/14 | | $200.00 |
| | 11/07/14 | | $120.00 |
| | 11/09/14 | | $200.00 |
| | 11/10/14 | | $1,200.00 |

Case 14-06783-5-SWH    Claim 7-2    Filed 04/06/15    Desc Main Document    Page 5 of 41

B 10A (Attachment A) (12/11)

Page 3

| | | | | |
|---|---|---|---|---|
| 3. | Filing Fees and Court Costs | | **Total:** | **$1,225.00** |
| | | 11/27/07 | | $75.00 |
| | | 02/26/10 | | $650.00 |
| | | 12/01/12 | | $500.00 |
| 4. | Advertisement Costs | | **Total:** | **$3,418.70** |
| | | 07/13/10 | | $590.04 |
| | | 03/29/11 | | $570.04 |
| | | 10/30/12 | | $604.04 |
| | | 05/28/14 | | $829.04 |
| | | 10/28/14 | | $825.54 |
| 5. | Sheriff/Auctioneer Fees | | **Total:** | **$222.08** |
| | | 11/27/07 | | $192.08 |
| | | 02/26/10 | | $30.00 |
| 6. | Title Costs | | **Total:** | **$1,875.00** |
| | | 03/02/07 | | $225.00 |
| | | 12/07/07 | | $225.00 |
| | | 11/30/10 | | $750.00 |
| | | 10/12/12 | | $200.00 |
| | | 11/26/13 | | $375.00 |
| | | 08/18/14 | | $100.00 |
| 7. | Recording Fees | | **Total:** | **$636.00** |
| | | 07/27/10 | | $36.00 |
| | | 07/27/10 | | $259.00 |
| | | 11/13/12 | | $259.00 |
| | | 11/13/12 | | $52.00 |
| | | 04/25/14 | | $4.00 |
| | | 04/25/14 | | $26.00 |
| 8. | Escrow Shortage or Deficiency | | **Total:** | **$47,154.75** |
| | (Do not include amounts that are part of any installment payment listed in Part 3.) | | | $47,154.75 |
| 9. | POC Fee (Preparation and Review) Post-petition pre-confirmation BK attorney fees (The attorney fees were incurred for reviewing the schedules, reviewing the plan, preparing the proof of claim, reviewing the loan documents, determining as to whether the creditor's rights are materially affected by the proposed plan, and advising the creditor of any further action necessary to protect its rights in the bankruptcy case.) | | **Total:** | **$350.00** |
| | | 04/06/15 | | $350.00 |
| 10. | Bankruptcy Legal Fees Prior BKY | | **Total:** | **$300.00** |
| | | 07/15/08 | | $150.00 |
| | | 07/15/08 | | $150.00 |
| 11. | Other   Specify: Mailing Fee | | **Total:** | **$74.38** |
| | | 02/26/10 | | $23.08 |
| | | 05/07/14 | | $5.13 |
| | | 05/14/14 | | $20.52 |
| |   Specify: Mailing Fee | 08/18/14 | | $5.13 |
| |   Specify: Mailing Fee | 08/27/14 | | $20.52 |
| 12. | **Total prepetition fees, expenses, and charges. Add all of the amounts listed above.** | | | **$63,347.79** |

Case 14-06783-5-SWH    Claim 7-2    Filed 04/06/15    Desc Main Document    Page 6 of 41

B 10A (Attachment A) (12/11)

Page 4

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the Installment payment amount Include an escrow deposit?**

☑ NO

☐ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable non-bankruptcy law.

1.  **Installment payments due**    Date last payment received by creditor    09/27/12

    Number of installment payments due    (1)    92

2.  **Amount of Installment payments due**

| | | | |
|---|---|---|---|
| 10 | Installments @ $727.31 | $7,273.10 | (04/20/07 through 01/20/08) |
| 12 | Installments @ $713.26 | $8,559.12 | (02/20/08 through 01/20/09) |
| 18 | Installments @ $713.00 | $12,834.00 | (02/20/09 through 08/20/10) |
| 6 | Installments @ $713.01 | $4,278.06 | (08/20/10 through 01/20/11) |
| 6 | Installments @ $713.00 | $4,278.00 | (02/20/11 through 07/20/11) |
| 6 | Installments @ $713.01 | $4,278.06 | (08/20/11 through 01/20/12) |
| 6 | Installments @ $713.00 | $4278.00 | (02/20/12 through 07/20/12) |
| 6 | Installments @ $713.01 | $4,278.06 | (08/20/12 through 01/20/13) |
| 22 | Installments @ $711.48 | $15,652.56 | (02/20/13 through 11/20/14) |

Total installment payments due as of the petition date    $65,708.96    Copy total here ▶    (2)    $65,708.96

3.  **Calculation of cure amount**

    Add total prepetition fees, expenses, and charges    Copy total from Part 2 here ▶    +    $63,347.79

    Subtract total of unapplied funds (funds received but not credited to account)    -    $

    Subtract amounts for which debtor is entitled to a refund    -    $

    **Total amount necessary to cure default as of the petition date**    (3)    **$129,056.75**

    Copy total onto item 4
    of Proof of Claim form

## Post-Petition Payment Amount:

Effective December 20, 2014, the monthly mortgage payment amount is $1,112.51.
The interest rate is 10.8200%.

# United States Bankruptcy Court

### Eastern District of North Carolina, Raleigh Division

## EXHIBIT "A"

| | | | | |
|---|---|---|---|---|
| In Re: | Sarah Baxter Hill | | | |
| | | Date: | 04/06/15 | |
| Principal Balance: | $69,555.74 | Loan No: | 2656 | |
| | | Uniform Claim No: | | |
| Pre-Petition Payments Due From: | 04/20/07 | Case No: | 14-06783-5-SWH | |
| Client: | Seneca Mortgage Servicing, servicer for Residential Mortgage Loan Trust 2013-TT2, by U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee | | | |

### TOTAL DEBT

| | | |
|---|---|---|
| Principal Balance | = | $69,555.74 |
| Interest Due | = | $57,289.11 |
| Late Charges | = | $2,319.70 |
| Attorney's Fees | = | $5,772.18 |
| Filing Fees and Court Costs | = | $1,225.00 |
| Advertisement Costs | = | $3,418.70 |
| Sheriff/Auctioneer Fees | = | $222.08 |
| Title Costs | = | $1,875.00 |
| Recording Fees | = | $636.00 |
| Escrow Advance | = | $47,375.00 |
| POC Fee (Preparation and Review) | = | $500.00 |
| Bankruptcy Legal Fees | = | $300.00 |
| Other: Specify: Mailing Fee | = | $74.38 |
| **TOTAL DEBT** | = | **$190,562.89** |

PAYMENT BREAKDOWN EFFECTIVE DATE:     December 20, 2014

| | |
|---|---|
| Monthly Principal & Interest Amount: | $727.31 |
| Monthly Escrow Amount: | $385.20 |
| **TOTAL MONTHLY MORTGAGE PAYMENT:** | **$1,112.51** |

Firm Case No: 1152848 (BK.FAY)


**seneca**
MORTGAGESERVICING
611 Jamison Road
Elma, NY 14059

**ESCROW ANALYSIS STATEMENT**

Phone Number: 1-866-919-5608

00039A
HARRY J HILL
2611 S AUSTIN AVE
DURHAM      NC  27713

Loan Number:
Statement Date: 01/06/15

RE: Important notice regarding your Annual Escrow Analysis and your new mortgage payment amount.

Dear Borrower:

Each year, Seneca Mortgage Servicing LLC reviews your escrow account to determine your new monthly escrow payment.  Following are the answers to the most common questions we receive about the annual escrow analysis and the details related to your account.

**1. What is the amount of my new monthly payment?**

| TABLE 1 | Current Payment | New Payment (as of December 20, 2014) | Change |
|---|---|---|---|
| Principal and Interest | $727.31 | $727.31 | $0.00 |
| Regular Escrow Payments *(Table 2 below)* | 0.00 | 385.20 | 385.20 |
| **Total Payment** | **$727.31** | **$1,112.51** | **$385.20** |

**2. Why did the escrow portion of my payment change?**
There are 2 main reasons your escrow account payment may change from year to year.

A. **Regular Escrow Payments** - Changes occur based on the expected vs actual property tax, insurance and/or other payments that were made this past year. Table 2 shows your payment results this past year.

| TABLE 2 Escrowed Item | Expected Payments | Actual Payments | Change |
|---|---|---|---|
| Total annual Escrow Payments | $0.00 | $0.00 | $0.00 |
| Monthly Escrow Payments | $0.00 | $385.20 | $385.20 |

Thank you for being a valuable customer of Seneca Mortgage Servicing LLC.

Seneca Mortgage Servicing LLC

HARRY J HILL

**Loan Number**
**NEW PAYMENT EFFECTIVE DATE:** December 01, 2014

**Table 3 - Annual History Disclosure Statement and the current estimate for escrow activity**
For your records, Table 3 includes a detailed history of your escrow account transactions since your last analysis effective with your November, 2014 payment. Last year's projections are next to the actual activity. An asterisk (*) indicates a difference between the projected and actual payments and disbursements. The letter E beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

Table 3 also shows the current estimate for escrow activity, balances and required balances for each month. This table shows the projected low balance point used to calculate an escrow reserve shortage repayment or overage.

| Table 3 Month History | Description | Payments Estimate | Actual | Disbursements Estimate | Actual | Total Balance | Minimum Required | Difference |
|---|---|---|---|---|---|---|---|---|
| | Beginning Balance | | | | | $0.00 | | |
| **Current Estimate** | Beginning Balance | | | | | -$47,154.75 | | |
| December | | 385.20 | | 0.00 | | -46,769.55 | 385.20 | -47,154.75 |
| January | | 385.20 | | 0.00 | | -46,384.35 | 385.20 | -46,769.55 |
| February | | 385.20 | | 0.00 | | -45,999.15 | 385.20 | -46,384.35 |
| March | | 385.20 | | 0.00 | | -45,613.95 | 385.20 | -45,999.15 |
| April | | 385.20 | | 0.00 | | -45,228.75 | 385.20 | -45,613.95 |
| May | | 385.20 | | 0.00 | | -44,843.55 | 385.20 | -45,228.75 |
| June | | 385.20 | | 0.00 | | -44,458.35 | 385.20 | -44,843.55 |
| July | | 385.20 | | 0.00 | | -44,073.15 | 385.20 | -44,458.35 |
| August | | 385.20 | | 0.00 | | -43,687.95 | 385.20 | -44,073.15 |
| September | | 385.20 | | 0.00 | | -43,302.75 | 385.20 | -43,687.95 |
| October | | 385.20 | | 0.00 | | -42,917.55 | 385.20 | -43,302.75 |
| November | | 385.20 | | 0.00 | | -42,532.35 | 385.20 | -42,917.55 |

** Low balance is used to determine escrow surplus or shortage in your escrow account resulting from anticipated disbursements for your property taxes and/or insurance premiums over the coming year. The difference between the projected balance and the minimum required balance will determine whether excess funds (surplus) or deficit funds (shortage) are projected for your escrow account in the coming year.

**Still need more information about your escrow analysis? Please contact our customer service department at 1-866-919-5608.**

You should consider this letter as coming from a debt collector as we sometimes act as a debt collector. Any information provided by you will be used to collect this debt. However if you are in bankruptcy or received a bankruptcy discharge of this debt, this letter is not an attempt to collect the debt, but notice of possible enforcement of our lien against the collateral property.

Please be advised that this is not an attempt to collect any pre-petition debt which has been previously claimed on the Proof of Claim. If there is, however, a shortage in your escrow account, this shortage amount only includes unpaid escrow advanced on your behalf after the date of bankruptcy filing, and does not include any unpaid pre-petition taxes or insurance advanced on your behalf and included on the proof of claim. If there is an overage in your escrow account, this will be sent to you only if your loan payments are current.

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| December 20 | 1996 | DURHAM | ,NORTH CAROLINA |
|---|---|---|---|
| [Date] | | [City] | [State] |

2809 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC  27713
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    77,400.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

MORTGAGE CHOICE, INC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    10.8200   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **January 20, 1997.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **December 20    , 2026**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 4705 UNIVERSITY DRIVE SUITE 290
DURHAM, NORTH CAROLINA 27707
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    726.50    . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of **January    , 1999**    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Eighty-Two-Hundredths**    percentage point(s) (   5.8200   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family - Freddie Mac Uniform Instrument
Page 1 of 3
-815 (9207).01    VMP MORTGAGE FORMS - (800)521-7291

Form 3590 7/92
Initials: H3H

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.8200** % or less than **10.8200** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **16.8200** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3502 7/93
Initials: _H S H_

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Harry J. Hill_ _____ (Seal)   _____ (Seal)
HARRY J. HILL                -Borrower                                            -Borrower

_____ (Seal)   _____ (Seal)
                             -Borrower                                            -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF EAGLE CAPITAL MORTGAGE, LTD.
WITHOUT RECOURSE.

THIS _23_ DAY OF _December_, 19 _96_
MORTGAGE CHOICE, INC.

By: _____
      FRANCIE HOWARD   ATTORNEY-IN-FACT

(Page 1 of 22)

# ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 20th        day of December        , 1998        and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
MORTGAGE CHOICE, INC.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2808 AND 2811 SOUTH ALSTON AVENUE, DURHAM, NC   27713
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of        10.8200    %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the first day of January        , 1999        , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If this Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Five  and
Eighty-Two-Hundredths        percentage point(s) (        5.8200    %)
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The  interest rate I am required  to pay at  the first  Change Date  will  not  be greater  than
        13.8200    % or less than        10.8200    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than
        16.8200    %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family - Freddie Mac Uniform Instrument        Form 3192 7/92
Page 1 of 2
⟐₂ -815A (9205)        VMP MORTGAGE FORMS - (800)521-7291        Initials: *H S H*
                                                                *S B H*

(Page 2 of 22)

 

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.   If all or any part of the Property or any Interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Harry J. Hill_ (Seal) _____ (Seal)
HARRY J. HILL       -Borrower                              -Borrower

_Sarah B. Hill_ (Seal) _____ (Seal)
SARAH B. HILL       -Borrower                              -Borrower

**RIDER TO**
**ADJUSTABLE RATE NOTE**
**FLOOR**

Note Date:  December 20, 1998

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO ADJUSTABLE RATE NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

**LIMIT ON INTEREST RATE CHANGES**

This loan has an interest rate "floor" which will limit the amount the interest rate can decrease. Regardless of any change in the Index, the interest rate during the term of this loan will never be less than the initial interest rate provided for in Section 2 of the Note.

Borrower

_Harry J Hill_
HARRY J. HILL

Borrower

_____

Borrower

_____

Borrower

_____

PAY TO THE ORDER OF

_HHF17, LLC_

"WITHOUT RECOURSE"
EAGLE CAPITAL MORTGAGE, LTD.

SIGNATURE: _____

BY: _____ GILBERT BARTEAU _____

TITLE: _____ PRESIDENT, EAGLE CAPITAL CORP., _____
_____ GENERAL PARTNER FOR _____
_____ EAGLE CAPITAL MORTGAGE, LTD. _____

DATE: _____ JAN -9 1997 _____

*BC*

ALLONGE

FRANKLIN CREDIT MGMT. CORP

Pay to the order of _____, WITHOUT RECOURSE, REPRESENTATION OR WARRANTY OF ANY KIND OR ANY RESPONSIBILITY OR LIABILITY WHATSOEVER.

HHF 17, LLC

By: _____
Name: Scott Roberts
Title: Manager
Date: Jan 29, 2005

## ENDORSEMENT

Instrument Type:              **NOTE**

Original Maker:               **HARRY J. HILL**

Date of Instrument:          *12/20/1996*

Original Principal Amount:   AMOUNT: $ 77,400.00

Mortgage Note duly endorsed to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I** , without representation, warranty or recourse.

FRANKLIN CREDIT MANAGEMENT CORPORATION

Id No:

By: _____

_____
Diana Marin
Witness

_____
Glenn Murphy
Senior Vice President

## ENDORSEMENT

Instrument Type:          NOTE

Original Maker:           HARRY J. HILL

Date of Instrument:       12/20/1996

Original Principal Amount:   AMOUNT: $ 77,400.00

Mortgage Note duly endorsed to **THE HUNTINGTON NATIONAL BANK, AS CERTIFICATE TRUSTEE OF FRANKLIN MORTGAGE ASSET TRUST 2009-A ,** without representation, warranty or recourse.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR FRANKLIN
CREDIT TRUST SERIES I
By:  Franklin Credit Management Corporation
As its Attorney in fact

By:

Glenn Murphy
Senior Vice President

Diana Marin

Witness

## ENDORSEMENT

| Instrument Type: | **NOTE** |
| Original Maker: | **HARRY J. HILL** |
| Date of Instrument: | **12/20/1996** |
| Original Principal Amount: | **AMOUNT: $ 77,400.00** |

 

    Mortgage Note duly endorsed to **WELLS FARGO BANK N.A., AS CERTIFICATE TRUSTEE NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF VNT TRUST SERIES 2010-2** , without representation, warranty or recourse.

THE HUNTINGTON NATIONAL BANK, AS
CERTIFICATE TRUSTEE OF FRANKLIN
MORTGAGE ASSET TRUST 2009-A
By:  Franklin Credit Management Corporation
As its Attorney in fact

By: _____

_____
Diana Marin ,
Witness

_____
Glenn Murphy
Senior Vice President

Hill

ENDORSEMENT

| | |
|---|---|
| Instrument Type: | NOTE |
| Original Maker: | HARRY J. HILL |
| Date of Instrument: | 12/20/1996 |
| Original Principal Amount: | AMOUNT: $ 77,400.00 |

Mortgage Note duly endorsed to **RESIDENTIAL MORTGAGE LOAN TRUST 2013-TT2, BY U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE** , without representation, warranty or recourse.

WELLS FARGO BANK, N.A. AS
CERTIFICATE TRUSTEE (NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS
CERTIFICATE TRUSTEE), IN TRUST FOR
REGISTERED HOLDERS OF VNT TRUST
SERIES 2010-2
by: Franklin Credit Management Corporation its
Attorney in fact

By: _____

Giselle Olivera                    Glenn Murphy
Witness                            Senior Vice President

PREPARED BY:
MORTGAGE CHOICE, INC.,

BOOK 2267 PAGE 37

4705 UNIVERSITY DRIVE SUITE 280
DURHAM, NORTH CAROLINA 27707
AND WHEN RECORDED MAIL TO :

NAME    EAGLE CAPITAL MORTGAGE, LTD.
ADDRESS  8131 LBJ Freeway Suite 420
CITY &   Dallas, TX  75251
STATE

BOOK NOTED

FILED
BOOK 2267 PAGE 37-38
'96 DEC 20 PM 4 41
WILLIE L. COVINGTON
REGISTER OF DEEDS
DURHAM COUNTY, N.C.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Corporation Assignment of Real Estate Mortgage/Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
EAGLE CAPITAL MORTGAGE, LTD.

all the rights, title and interest of undersigned in and to that certain Real Estate Mortgage/Deed of Trust dated
December 20, 1996                                                                    , executed by
HARRY J. HILL, MARRIED
    SARAH B. HILL, his wife,

to MORTGAGE CHOICE, INC.
organized under the laws of THE STATE OF NORTH CAROLINA         and whose principal place of business is in
4705 UNIVERSITY DRIVE SUITE 280, DURHAM, NORTH CAROLINA 27707          DURHAM
and recorded in    2267          page(s) 29                                    County Records,
State of  NORTH CAROLINA described hereinafter as follows:
Land situated in the                                    DURHAM       County,   NORTH CAROLINA


      See attached Exhibit "A"


State of North Carolina – Durham County
The foregoing or annexed certificate(s) of
Willian R. Oneil
A Notary (Notaries) Public for the Designated Governmental
unit(s) is (are) certified to be correct.
This the  22 day of  Dec 1996
WILLIE L. COVINGTON  Monica L. Bernds
Register of Deeds          By: Assistant / Deputy
                                    Register of Deeds

Parcel
Commonly known as: 2609 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC  27713

TOGETHER with the note or notes therein described or referred to, the money due and to become
interest, and all rights accrued or to accrue under said Real Estate Mortgage/Deed of Trust.

STATE OF  Person
COUNTY OF

On December 20, 1996 before me, the
          (Date of Execution)
undersigned, a Notary Public in and for said County and State,
personally appeared T James Enright, Jr
known to me to be the  President
and  Beth Scoggins
known to me to be  Secretary
of the corporation herein which executed the within
Instrument, that the seal affixed to said instrument is the
corporate seal of said corporation; that said instrument was
signed and sealed on behalf of said corporation pursuant to
its by-laws or a resolution of its Board of Directors and that
he/she acknowledges said Instrument to be the free act and
deed of said corporation.

MORTGAGE CHOICE, INC.
T James Enright, Jr.
By: T James Enright, Jr
Its: President

Beth Scoggins
By: Beth Scoggins
Its: Secretary

Melissa Clark
Witness:

Notary Public  Melissa R. Clark
                                    County,

My Commission Expires  3/8/2002    38236    [THIS AREA FOR OFFICIAL NOTARIAL SEAL]

BOOK 2267 PAGE    38

EXHIBIT "A"

BEGINNING at a stake in the property line on the East side of Alston Avenue Road, the Northwest corner of Lot #4 as shown on plat hereinafter referred to, running thence along the Northern boundary line of said lot #4 North 88 degrees 45' East 215.6 feet to a stake, the Northeast corner of said lot #4; thence North 7 degrees 55' East 151.8 feet to a stake; thence South 88 degrees 45' West 231 feet to a stake in the property line on the East side of Alston Avenue; thence along and with grid East line of Alston Avenue Road; South 2 degrees 10' West 150 feet to the place or point of beginning, and being Lots Nos. 1,2, and 3 as shown on the plat of property of A.L. Wynne according to survey of E.H. Copley, C.E. April 1938, Said Plat being duly recorded in the office of the Register of Deeds of Durham County in Plat Book 12 at page 51.

AND

BEGINNING at a point six feet north from an iron stake in the northwest corner of lot Number one, known as the A.L. Wynne property on the east side of Alston Avenue Road, and running thence north 87 degrees 00' east 281 feet to an iron stake; thence south 12 degrees 00' west 157.5 feet to an iron stake; thence north 87 degrees 00' west 50 feet to an iron stake; thence north 12 degrees 00' east 151.5 feet to a point at the northeast corner of said lot number one; thence south 87 degrees 00' west 231 feet to an iron stake at the northwest corner of lot number one referred to above; thence north 6 degrees 30' east six feet to the point or place of beginning.

FOR REGISTRATION REGISTER OF
WILLIE J. COVINGTON
DURHAM COUNTY, NC
2001 MAY 21 03:27:18 PM
BK:3060 PG 010-021 FEE:\$11.00
INSTRUMENT # 2001021314

Prepared by: Kevin Mapue
OCWEN FEDERAL BANK FSB
THE FORUM, SUITE 105
1665 PALM BEACH LAKES BLVD,
WEST PALM BEACH, FLORIDA 33401

RECORD & RETURN TO:
Court Explorers, Inc.
300 Rector Place
New York, NY 10280
(212) 945-8324

Loan Number

OFB#:
DN#:

ASSIGNMENT OF DEED OF TRUST
NORTH CAROLINA

THIS ASSIGNMENT OF DEED OF TRUST is made and entered into as of the 16th day of April, 2001, from EAGLE CAPITAL MORTGAGE, LTD., whose address is c/o Ocwen Federal Bank FSB, 1665 Palm Beach Lakes Blvd., Suite 105, West Palm Beach, Florida 33401 ("Assignor") to HHF17, LLC, whose address is c/o Ocwen Federal Bank FSB, 1665 Palm Beach Lakes Blvd., Suite 105, West Palm Beach, Florida 33401 ("Assignee"),

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, in trust, all of the rights, title and interest of said Assignor in and to the following deed of trust describing land therein, duly recorded in the Office of the County Recorder of DURHAM County, State of NORTH CAROLINA, as follows:

Trustor: HARRY J HILL    SARAH B HILL
Trustee:  JENNIFER A. JORDAN
Beneficiary: MORTGAGE CHOICE, INC,
Document Date: 12/20/96
Book/Volume/Docket/Liber:  2207
Page/Folio:  28
Property Address:  2609 & 2811.8 ALSTON AVE DURHAM, NC 27713

Together with any and all notes and obligations therein described, or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.

This Assignment is made without recourse, representation or warranty.

DATED: April 16, 2001

EAGLE CAPITAL MORTGAGE, LTD.
By its Attorney-in-Fact OCWEN FEDERAL BANK FSB

BY:

NAME: Arthur J. Castner

TITLE:  Vice President

*POA Rec: 7/12/2000*
*Book: 2876*
*Page: 455*
*Inst: 20000 24665*

STATE OF FLORIDA        )
                        ) ss.
COUNTY OF PALM BEACH    )

I, Mark L. Elliott, Notary Public, do hereby certify that Arthur J. Castner personally came before me this day and being by me duly sworn says that he/she executed the foregoing instrument for and on behalf of the said Ocwen Federal Bank FSB, attorney-in-fact for Eagle Capital Mortgage, Ltd, and that his authority to execute and acknowledge said instrument is contained in an instrument dated 1/21/1000, duly executed and recorded in the DURHAM County Registry at Deed Book 2870, Page 453, Instrument 2000024665, and that this instrument was executed under and by virtue of the authority given by said instrument granting him Power of Attorney, and that the said Arthur J. Castner acknowledges his due execution of the foregoing instrument for the purposes therein expressed for and on behalf of the said Ocwen Federal Bank FSB, attorney-in-fact for Eagle Capital Mortgage, Ltd.

Witness my hand and official seal, this the 16th day of April, 2001.

_____
Notary Public

Caridad R Sanderson
My Commission CC917754
Expires March 12, 2004

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY NC
2005 JAN 03 11:45:09 AM
BK:5071 PG:893-894 FEE:$14.00
INSTRUMENT # 2005000061

PREPARED BY & RETURN TO:
S.A. Wileman
Orion Financial Group, Inc.
2160 Exchange Blvd. # 100
Southlake, TX 76092

## Assignment of Deed of Trust

For Valuable Consideration, the undersigned, HHF17 LLC  C/O Ocwen Federal Bank, FSB, 1665 Palm Beach Lakes Blv. The Forum, Suite 165, West Palm Beach, FL 33401 (Assignor) by these presents does assign and set over, without recourse, to FRANKLIN CREDIT MANAGEMENT CORPORATION 101 Hudson Street, 25th Floor, Jersey City, NJ 07302 (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by HARRY J HILL, MARRIED AND SARAH B HILL, HIS WIFE to MORTGAGE CHOICE, INC.,   Said mortgage Dated: 12/28/1996 is recorded in the State of NC, County of Durham on 12/20/1996, as Book 2267 Page 29 AMOUNT: $ 77,400.00    Property Address: 2609 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC 27713

IN WITNESS WHEREOF, the Undersigned Corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: December 21, 2005
HHF17 LLC

By: _____
Scott Ruberly

State of Connecticut, Fairfield                 County
On December 21, 2005, before me, Ann Exter Gee           , a Notary Public for said County and State, personally appeared Scott Ruberly            , who being duly sworn, says that he/she is Vice President
Scott Ruberly             for HHF17 LLC, on behalf of said corporation by its authority duly given, acknowledged the said writing to be the act and deed of said corporation. Witness my hand and seal this December 21, 2005.

Notary public, _____
My commission expires: _____

Ann E. Jerge
NOTARY PUBLIC
State of Connecticut
My Commission Expires 08/30/09

NC Durham

FCMC/GE FINANCE



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

| | |
|---|---|
| Filed For Registration: | 01/03/2008 11:45:09 AM |
| Book: | RE  5071  Page: 893-894 |
| Document No.: | 2006000061 |
| | ASGM  2 PGS  $14.00 |
| Recorder: | SHARON M CEARNEL |



2006000061



2009004283

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2009 FEB 16 01:13:37 PM
BK:6143 PG:540-541 FEE:$14.00
INSTRUMENT # 2009004283

PREPARED BY & RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

## Assignment of Deed of Trust

For Valuable Consideration, the undersigned, FRANKLIN CREDIT MANAGEMENT CORPORATION 101 Hudson St., 25th Floor, Jersey City, NJ 07302 (Assignor) by these presents does assign and set over, without recourse, to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I 1761 East St. Andrew Place, Santa Ana, CA 92705-4934 (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by HARRY J HILL, MARRIED AND SARAH B HILL, HIS WIFE to MORTGAGE CHOICE, INC.. Said mortgage Dated: 12/20/1996 is recorded in the State of NC, County of Durham on 12/20/1996, as Book 2267 Page 29 AMOUNT: $ 77,400.00    Property Address: 2609 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC 27713

IN WITNESS WHEREOF, the Undersigned Corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: January 12, 2009
FRANKLIN CREDIT MANAGEMENT CORPORATION

By: _____
M. E. Wileman, Vice President

State of Texas, Tarrant County
On January 12, 2009, before me, Julie Bacon, a Notary Public for said County and State, personally appeared M. E. Wileman, who being duly sworn, says that he/she is Vice President for FRANKLIN CREDIT MANAGEMENT CORPORATION, on behalf of said corporation by its authority duly given. M. E. Wileman acknowledged the said writing to be the act and deed of said corporation. Witness my hand and seal this January 12, 2009.

JULIE BACON
Notary Public, State of Texas
My Commission Expires
November 30, 2010

_____
Notary public, Julie Bacon
My commission expires: November 30, 2010

NC Durham                        FCMC/ASMTPROJ/BANKRU



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Filed For Registration: | 02/16/2009 01:13:37 PM |
| Book: | RE  6143  Page: 540-541 |
| Document No.: | 2009004283 |
| | ASGM  2 PGS  $14.00 |
| Recorder: | APRIL J WILLIAMS |





2009004283

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
Durham County, NC
2012 OCT 01 04:03:14 PM
BK:7094 PG:77-78 FEE:$26.00
INSTRUMENT # 2012034869

PREPARED BY & RETURN TO:
M.E. Wileman   *Orion Financial Group*
2860 Exchange Blvd. # 100
Southlake, TX 76092

**RECORD FIRST**

### Assignment of Deed of Trust

For Valuable Consideration, the undersigned, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I By: Franklin Credit Management Corporation As its Attorney in fact 1761 EAST ST. ANDREWS PLACE, SANTA ANA, CA 92705 (Assignor) by these presents does assign and set over, without recourse, to THE HUNTINGTON NATIONAL BANK, AS CERTIFICATE TRUSTEE OF FRANKLIN MORTGAGE ASSET TRUST 2009-A  7 EASTON OVAL  EA5E63, COLUMBUS, OH 43219 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by HARRY J HILL, MARRIED AND SARAH B HILL, HIS WIFE to MORTGAGE CHOICE, INC.  Trustee: JENNIFER A JORDAN  Said deed of trust Dated: 12/20/1996 is recorded in the State of NC, County of Durham on 12/20/1996, as Book 2267 Page 29 AMOUNT: $ 77,400.00
Property Address: 2609 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC 27713

IN WITNESS WHEREOF, the Undersigned Corporation has caused this Instrument to be executed as a sealed Instrument by its proper officer. Executed on: 9/4/12
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I By: Franklin Credit Management Corporation As its Attorney in fact

By: _James Volinski_
_AVP Servicing_

State of _NJ_  _Hudson_  County
On _9/4/12_, before me, _Ashleigh K. White_, a Notary Public for said County and State, personally appeared _James Volinski_, who being duly sworn, says that he/she is _AVP_, of/By: Franklin Credit Management Corporation As its Attorney in fact  for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FRANKLIN CREDIT TRUST SERIES I and the authority to execute and acknowledge said instrument is contained in an instrument duly executed, acknowledged and recorded in the Clerks office in the County of Tarrant, State of Texas on 07/07/2009 in INST# D209179528, and that said writing was signed by him on behalf of said corporation as _AVP_ by its authority duly given. And said _AVP_ acknowledged the said writing to be the act and deed of said corporation by and through its Attorney In Fact. Witness my hand and seal this _9/4/12_.

_Ashleigh K. White_
Notary Public,
My commission expires: _____

ASHLEIGH K. WHITE
A Notary Public of New Jersey
My Commission Expires 7/17/2016

NC Durham

FCMC/BRUP/ASMT/RUSH



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording
and/or cancellation.

| | |
|---|---|
| Filed For Registration: | 10/01/2012 04:03:14 PM |
| Book: | RE  7064  Page: 77-78 |
| Document No.: | 2012034869 |
| | ASGM   2 PGS   $26.00 |
| Recorder: | SHARON M CEARNEL |



2012034869




2012034870

FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2012 OCT 01 04:03:14 PM
BK:7084 PG:79-88 FEE:$26.00
INSTRUMENT # 2012034870

PREPARED BY & RETURN TO:
M. B. Wileman   Orion Financial Group Inc
2860 Exchange Blvd. # 100
Southlake, TX 76092

REC ...

### Assignment of Deed of Trust

For Valuable Consideration, the undersigned, THE HUNTINGTON NATIONAL BANK, AS CERTIFICATE TRUSTEE OF FRANKLIN MORTGAGE ASSET TRUST 2009-A By: Franklin Credit Management Corporation As its Attorney in fact 7 EASTON OVAL EAF63, COLUMBUS, OH 43219 (Assignor) by these presents does assign and set over, without recourse, to WELLS FARGO BANK N.A., AS CERTIFICATE TRUSTEE NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF VNT TRUST SERIES 2010-2 9061 Old Annapolis Rd, COLUMBIA, MD 21045 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by HARRY J HILL, MARRIED AND SARAH B HILL, HIS WIFE to MORTGAGE CHOICE, INC., Trustee;  Said deed of trust Dated: 12/20/1996 is recorded in the State of NC, County of Durham on 12/20/1996, as Book 2267 Page 29 AMOUNT: $ 77,400.00   Property Address: 2609 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC 27713

IN WITNESS WHEREOF, the Undersigned Corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: 9/4/12
THE HUNTINGTON NATIONAL BANK, AS CERTIFICATE TRUSTEE OF FRANKLIN MORTGAGE ASSET TRUST 2009-A By:  Franklin Credit Management Corporation As Its Attorney in fact

By: _____

AVP Servicing

State of _____ County _____
On _____ before me, Dolores K Carey, a Notary Public for said County and State personally appeared _____ who being duly sworn, says that he/she is AVP Servicing of By: Franklin Credit Management Corporation As its Attorney in fact for THE HUNTINGTON NATIONAL BANK, AS CERTIFICATE TRUSTEE OF FRANKLIN MORTGAGE ASSET TRUST 2009-A and the authority to executing, acknowledge said instrument is contained in an instrument duly executed, acknowledged and recorded in the Clerk's office in the County of Tarrant, State of Texas on 07/27/2009 in INST# D209179528, and that said writing was signed by him on behalf of said corporation as _____ AVP _____ by its authority duly given.  And said _____ AVP acknowledged the said writing to be the act and deed of said corporation by and through its Attorney In-Fact.  Witness my hand and seal this 9/4/12

_____
Dolores K Carey

Notary public,
My commission expires _____ DOLORES K. CAREY
NOTARY PUBLIC OF NEW JERSEY
NC Durham COMMISSION EXPIRES AUG. 17, 2015
HUN/FCMC/HUP/ASM1/RUSH



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

| | | |
|---|---|---|
| Filed For Registration: | 10/01/2012 04:03:14 PM | |
| Book: | RE  7084  Page: 79-80 | |
| Document No.: | 2012034870 | |
| | ASGM  2 PGS  $26.00 | |
| Recorder: | SHARON M CEARNEL | |



2012034870

Book7609 - Page319  Page 1 of 1

FOR REGISTRATION
Willie L. Covington
REGISTER OF DEEDS
Durham County, NC
2014 DEC 01 12:10:05
BK:7609 PG:319-319
ASSIGNMENT
FEE:$26.00
INSTRUMENT # 2014036441

SCE#RNEL

2014036441

PREPARED BY & RETURN TO:
M. B. Wileman    Orion Financial
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Deed of Trust**        **RECORD SECOND**

For Valuable Consideration, the undersigned, WELLS FARGO BANK, N.A. AS CERTIFICATE TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VNT TRUST SERIES 2010-2 By: Franklin Credit Management Corporation its Attorney in fact 9062 Old Annapolis Rd, Columbia, MD 21045 (Assignor) by these presents does assign and set over, without recourse, to RESIDENTIAL MORTGAGE LOAN TRUST 2013-TT2, BY U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE Attn: Corporate Trust Services, RMLT 2013-TT2, U.S. Bank National Association, 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by HARRY J HILL, MARRIED AND SARAH B HILL, HIS WIFE to MORTGAGE CHOICE, INC.,  Trustee; JENNIFER A JORDAN  Said deed of trust Dated: 12/20/1996 is recorded in the State of NC, County of Durham on 12/20/1996, at Book 2267 Page 29 AMOUNT: $ 77,400.00    Property Address: 2609 AND 2611 SOUTH ALSTON AVENUE, DURHAM, NC 27713

IN WITNESS WHEREOF, the Undersigned Corporation has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: 12/2/13
WELLS FARGO BANK, N.A. AS CERTIFICATE TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VNT TRUST SERIES 2010-2  By:  Franklin Credit Management Corporation its Attorney in fact

By: _____
        Glenn Murphy
        Senior Vice President

State of __UI__  __Hudson__ County
On 12/2/13, before me, __DJCROSKI CAREY__ a Notary Public for said County and State, personally appeared __GLENN MURPHY__, who being duly sworn, says that he/she is __SR. V.P.__ , of By: Franklin Credit Management Corporation its Attorney in fact for WELLS FARGO BANK, N.A. AS CERTIFICATE TRUSTEE (NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE), IN TRUST FOR REGISTERED HOLDERS OF VNT TRUST SERIES 2010-2  and the authority to execute and acknowledge said instrument is contained in an instrument duly executed, acknowledged and recorded in the Clerks office in the County of Durham, State of  North Carolina on __*__ in _____, and that said writing was signed by him on behalf of said corporation as _____ by its authority duly given. And said _____ acknowledged the said writing to be the act and deed of said corporation by and through its Attorney in Fact.  Witness my hand and seal this _____.

* Power of Attorney is being
recorded simultaneously
herewith

Notary Public
My commission expires:

NC Durham                              FCMC/SEERSALE/CPD

Prepared by: Jennifer A. Jordan           BOOK **2267** PAGE   **29**
Mail to: Mortgage Choice, Inc.
4705 University Drive                                    FILED
Suite 290                               BOOK *2267* PAGE *29-36*
Durham, NC  27707
                                        '96 DEC 20  PM 4 40

                                        WILLIE L. COVINGTON
                                        REGISTER OF DEEDS
                                        DURHAM COUNTY, N.C.

---

[Space Above This Line For Recording Data]

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **December 20, 1996**.
**HARRY J. HILL, MARRIED**  and **Sarah B. Hill, his wife**                    . The grantor is

("Borrower"). The trustee is  **Jennifer A. Jordan**

("Trustee"). The beneficiary is **MORTGAGE CHOICE, INC.**

which is organized and existing under the laws of **THE STATE OF NORTH CAROLINA**              , and whose
address is  **4705 UNIVERSITY DRIVE SUITE 290**
**DURHAM, NORTH CAROLINA 27707**                           ("Lender"). Borrower owes Lender the principal sum of
**Seventy-Seven Thousand Four Hundred and No/100** -----------------------------

                                                Dollars (U.S. $      **77,400.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on **December 20, 2026**         . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with
power of sale, the following described property located in **DURHAM**                          County, North Carolina:

                              SEE ATTACHED EXHIBIT A

which has the address of   **2809 AND 2811 SOUTH ALSTON AVENUE    DURHAM**
North Carolina   **27713**                        [Zip Code]  ("Property Address");            [Street, City],
NORTH CAROLINA - Single Family - FNMA/FHLMC      **THIS INSTRUMENT WAS PREPARED OUT OF STATE**
        UNIFORM INSTRUMENT   Form 3034 9/90
   -4R(NC)(9409)           Amended 5/91
        VMP MORTGAGE FORMS - (800)521-7291              **39235**
Page 1 of 6                     Initials: H.J.H
                                        S.B.H

                               [handwritten:]
                               ASGMT
                               BK 2267
                               PG 37
                               12.20.96

BOOK **2267** PAGE **30**

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-6R(NC)(9603)          Page 2 of 8          Form 3834 9/90

SBH

BOOK 2267 PAGE 31

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

-6R(NC)(9605)                    Page 3 of 6                    Form 3034 9/90

Initials: _AJH_
_SBH_

BOOK 2267 PAGE 32

BOOK 2267 PAGE 33

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

-4R(NC) (9608)                                    Page 6 of 8                                    Form 3034 8/90
                                                                                                     Initials: H.S.H
                                                                                                     S.B. H.

BOOK 2267 PAGE 34

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein, Trustee shall apply the proceeds of the sale in the following orders: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of      5.0000   % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

22. Release.  Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

23. Substitute Trustee.  Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Riders to this Security Instrument.  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] VA Rider | [ ] Other(s) [specify] | |

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
HARRY J. HILL                         -Borrower

_____
Witness

_____ (Seal)
                                      -Borrower

_____
Witness

_____ (Seal)
SARAH B. HILL              -Borrower

_____ (Seal)
                                      -Borrower

STATE OF NORTH CAROLINA,  DURHAM                                   County ss:
I,     Beverly F. Glenn              , a Notary Public of the County of   Durham
State of North Carolina, do hereby certify that   HARRY J. HILL
and SARAH B. HILL, his wife,                   personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 20th        day of   December        , 1998.

My Commission Expires:   10/7/2001              Beverly F. Glenn
                                                   Notary Public Beverly F. Glenn

STATE OF NORTH CAROLINA,  Durham                                   County ss:
The foregoing certificate of   Beverly F. Glenn
a Notary Public of the County of   Durham      , State of   NC            , is
certified to be correct.
This      20      day of   Dec       19    .

                                                   WILLIE L. COVINGTON
                                                   Registrar of Deeds

                                                   By _____
NCB-6R(NC)(9304)                                   Deputy Assistant
Page 6 of 6
                                                   Form 3034 9/90

BOOK **2267** PAGE **35**

## ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 20th      day of December      1998
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Adjustable Rate Note (the "Note") to
MORTGAGE CHOICE, INC.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2809 AND 2811 SOUTH ALSTON AVENUE, DURHAM, NC 27713
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of           10.6200   %. The Note provides for changes in
the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the first day of January      , 1999      , and on that
day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as
published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the
month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and
Eighty-Two-Hundredths                percentage point(s) (           5.8200   %)
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate
in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than
12.6200   % or less than   10.6200   %. Thereafter, my interest rate will never be
increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of
interest I have been paying for the preceding six months. My interest rate will never be greater than
16.6200   %.
(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly
payment beginning on the first monthly payment date after the Change Date until the amount of my monthly
payment changes again.
(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my
monthly payment before the effective date of any change. The notice will include information required by law to be
given me and also the title and telephone number of a person who will answer any question I may have regarding
the notice.

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family - Freddie Mac Uniform Instrument
Form 3192 7/92
-815A (9305)        Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291

Initials: *H S H*
*S B H*

BOOK **2267** PAGE **36**

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.    If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Harry J. Hill_ (Seal)          _____ (Seal)
**HARRY J. HILL**        -Borrower                 -Borrower

_Sarah B. Hill_ (Seal)          _____ (Seal)
**SARAH B. HILL**        -Borrower                 -Borrower

**EXHIBIT "A"**

pg. 36

BEGINNING at a stake in the property line on the East side of Aleton Avenue Road, the Northwest corner of Lot #4 as shown on plat hereinafter referred to, running thence along the Northern boundary line of said lot #4 North 88 degrees 45' East 215.6 feet to a stake, the Northeast corner of said lot #4; thence North 7 degrees 55' East 151.8 feet to a stake; thence South 88 degrees 45' West 231 feet to a stake in the property line on the East side of Aleton Avenue; thence along and with grid East line of Aleton Avenue Road; South 2 degrees 10' West 150 feet to the place or point of beginning, and being Lots Nos. 1,2, and 3 as shown on the plat of property of A.L. Wynne according to survey of E.H. Copley, C.E. April 1938, said Plat being duly recorded in the office of the Register of Deeds of Durham County in Plat Book 12 at page 51.

AND

BEGINNING at a point six feet north from an iron stake in the northwest corner of lot Number one, known as the A.L. Wynne property on the east side of Aleton Avenue Road, and running thence north 87 degrees 00' east 281 feet to an iron stake; thence south 12 degrees 00' west 157.5 feet to an iron stake; thence north 87 degrees 00' west 50 feet to an iron stake; thence north 12 degrees 00' east 151.5 feet to a point at the northeast corner of said lot number one; thence south 87 degrees 00' west 231 feet to an iron stake at the northwest corner of lot number one referred to above; thence north 6 degrees 30' east six feet to the point or place of beginning.



**seneca**
MORTGAGE**SERVICING**
611 Jamison Road
Elma, NY 14059

## Mortgage Statement

Statement Date:    February 10, 2015

*How to Reach Us:*
*Online information:*    www.senecaservicing.com
*Telephone:*    866-919-5608
*Fax:*    516-832-6411

*Correspondence Address:*
Seneca Mortgage Servicing LLC
ATTN: Customer Service
611 Jamison Road
Elma, NY 14059

008406
HARRY J HILL
2611 S AUSTIN AVE
DURHAM, NC 27713

*Property Address:*
2609 & 2611 ALSTON AVE
DURHAM, NC 27713 0000

### ACCOUNT INFORMATION

| | |
|---|---|
| Loan Number: | 2656 |
| Next Payment Due Date: | 02/20/2015 |
| **Total Amount Due:** | **$21,362.74** |
| **1st Mortgage:** | |
| Principal Balance | $69,555.74 |
| Interest Rate (Until 01/20/2008) | 11.125% |
| Prepayment Penalty | No |
| **2nd Mortgage:** | |
| Principal Balance | $0.00 |
| Interest Rate | 0.000% |
| Prepayment Penalty | No |
| Corporate Advance Balance | $11,341.65 |
| Escrow Balance | -$47,154.75 |

### EXPLANATION OF AMOUNT DUE

| | |
|---|---|
| Loan Due Date | 04/20/2007 |
| 1st Principal | $0.00 |
| 2nd Principal | $0.00 |
| 1st Interest | $0.00 |
| 2nd Interest | $0.00 |
| Escrow (Taxes and Insurance) | $385.20 |
| Other | $0.00 |
| **Regular Monthly Payment** | **$385.20** |
| Total Fees and Charges | $13,661.35 |
| Overdue Payments | $7,316.19 |
| **Total Amount Due** | **$21,362.74** |
| Suspense Balance | $0.00 |

### ACCOUNT ACTIVITY Through 02/10/15

| Date Paid | Description | Principal | Interest | Escrow | Other | Late Charges/Fees | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

### PAST PAYMENTS BREAKDOWN

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal (1st and 2nd) | $0.00 | $0.00 |
| Interest (1st and 2nd) | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)* | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

**Important Information About Partial Payments**

* Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

### *** DELINQUENCY NOTICE ***

Your loan is in active Bankruptcy. You are receiving this billing statement because you or your attorney has requested that you receive periodic statements. If you wish to not receive future statements, please contact us immediately.

**Recent Account History**
* Payment Due 08/20/07 Unpaid Amount of $727.31.
* Payment Due 09/20/07 Unpaid Amount of $727.31.
* Payment Due 10/20/07 Unpaid Amount of $727.31.
* Payment Due 11/20/07 Unpaid Amount of $727.31.
* Payment Due 12/20/07 Unpaid Amount of $727.31.
* Payment Due 01/20/08 Unpaid Amount of $727.31.
Current payment due 02/20/15: $385.20.
Total Amount Due: $21,362.74. You must pay this amount to bring your loan current (Please see Explanation of Amount Due box). *This figure may not include all attorney's fees and property inspection charges that have been incurred in connection with your delinquency.
If You Are Experiencing Financial Difficulty: If you would like mortgage counseling or assistance, you can find a list of counselors in your area on the U.S. Department of Housing and Urban Development's website at www.hud.gov or by calling 800-569-4287.

*Please detach bottom portion and send with your payment. Make Checks Payable to Seneca Mortgage Servicing LLC. Allow 7-10 days for postal delivery. Please do not send cash.*

### AMOUNT DUE

| | |
|---|---|
| Loan Number | 2656 |
| Borrower | HARRY J HILL |
| **Due By 02/20/2015** | **$21,362.74** |

*$29.09 late fee will be charged after 03/08/2015.*

☐ Check this box if address form completed on the reverse.

| | |
|---|---|
| Monthly Payment Amount | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Late Fees | $ |
| Other** (Please Specify) | $ |
| **TOTAL ENCLOSED** | $ |



EXHIBIT
B

**seneca**
MORTGAGE**SERVICING**
P.O. Box 454
Depew, NY 14043-0454

## This is not a bill. This is for your information only.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

**SARAH BAXTER HILL,**                          **CASE NO. 14-06783-5-SWH**
                                                 **CHAPTER 13**

     **DEBTOR**

## NOTICE OF OBJECTION TO CLAIM

     NOTICE IS HEREBY GIVEN to the creditor/claimant named above that if no
response to the Objection to Amount of Claim is filed in writing with the CLERK, U.S.
BANKRUPTCY COURT, PO Box 791, RALEIGH, NC 27602, within thirty (30) days of
the date of this objection and notice, the relief requested by the debtor herein maybe
granted without hearing or further notice. Any party desiring a hearing must request a
hearing in writing with the above clerk within the time herein set forth; otherwise no
hearing will be conducted unless the Court, in its discretion, directs that a hearing be set.
If a hearing is requested, such hearing will be conducted at a date, time, and place to be
later fixed by the Court and the parties requesting such a hearing will be notified
accordingly. Any party filing a response and requesting a hearing shall attend the hearing
or costs may be assessed against him.

     Dated: May 22, 2015.

                             SASSER LAW FIRM

                             By: s/ Travis Sasser
                             Travis Sasser, State Bar No. 26707
                             2000 Regency Parkway, Suite 230
                             Cary, N.C. 27518
                             Tel: 919.319.7400
                             Fax: 919.657.7400

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Objection to Claim and Notice of Objection to Claim was served on the entities listed below at their last known address with sufficient postage thereon, or, if such interested party is an electronic filing user, by serving such interested party, electronic transmission, pursuant to Local Rule 5005-4(9)(b).

Trustee
*Served Electronically*

Residential Mortgage Loan Trust 2013-TT2, by U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee
Attn: Managing Agent
c/o Seneca Mortgage Servicing, LLC
611 Jamison Road
Elma, NY 14059

Seneca Mortgage Servicing
c/o S. Troy Staley
Hutchens Law Firm
Bankruptcy Department
P.O. Box 2505
Fayetteville, North Carolina 28302

Sarah Hill
2611 S. Alston Avenue
Durham, NC 27713

I certify under penalty of perjury that the foregoing is true and correct.

Dated: May 22, 2015.

SASSER LAW FIRM

By: s/ Travis Sasser
Travis Sasser, State Bar No. 26707
2000 Regency Parkway, Suite 230
Cary, N.C. 27518
Tel: 919.319.7400
Fax: 919.657.7400